565 P.2d 957 (1977)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Ronald Dean KEELIN, Defendant-Appellant.
No. 76-347.
Colorado Court of Appeals, Div. I.
March 10, 1977.
Rehearing Denied April 7, 1977.
*958 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., E. Ronald Beeks, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, James F. Dumas, Jr., Chief Deputy Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.
COYTE, Judge.
The defendant, Ronald Keelin, appeals his conviction of theft, conspiracy to commit theft, criminal impersonation, and habitual criminal charges. We affirm the judgment in part, reverse in part, and remand the cause for further proceedings.
Mrs. Ada Wilder, the victim of the theft, informed Fort Collins police officers that she had received a telephone call from a person representing himself as an officer of the local bank at which she maintained a savings account. The caller stated that the bank suspected instances of embezzlement by its employees and requested Mrs. Wilder's assistance in apprehending these employees.
Acting under the caller's instructions, Mrs. Wilder went to the bank and withdrew $2,000 from her account. She returned to her home with this amount in cash and was immediately telephoned a second time by the purported bank officer. During the conversation between Mrs. Wilder and the caller, a man whom she later identified as the defendant arrived at her home. Mrs. Wilder testified that the man identified himself as a "security officer" employed by the bank who had been directed to return her savings to the bank. Mrs. Wilder surrendered the funds to this person, but the money was never re-deposited in Mrs. Wilder's account. Defendant was subsequently arrested, charged, and found guilty of all charges by a jury.

I
Defendant contends that the trial court erred in admitting into evidence testimony that Mrs. Wilder had identified defendant through a photographic display, as this display was impermissibly suggestive. We do not agree.
The question of whether photographic identification procedures are impermissibly suggestive must be resolved in light of the totality of the surrounding circumstances, People v. Jones, Colo., 553 P.2d 770 (1976), and in order to constitute a denial of due process, these procedures must be so unduly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Factors to be considered in determining the likelihood of misidentification include the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the certainty demonstrated by the witness at the time of the identification and the length of time between the crime and the identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Here, during the commission of the crime, Mrs. Wilder had a clear opportunity to view the accused and only a short time had elapsed between the crime and her examination of the photographic display. Although when defendant came to her home she had been distracted by the telephone conversation, and at the time of the display demonstrated some uncertainty concerning his physical characteristics, both Mrs. Wilder and the officer conducting the display testified in an in camera proceeding that no suggestive comments or gestures occurred during the display. Further, defendant's counsel thoroughly cross-examined Mrs. Wilder at the trial concerning her identification.
*959 It was not essential that Mrs. Wilder's identification be totally free from doubt as a prerequisite to admissibility. People v. Watkins, Colo., 553 P.2d 819 (1976). Accordingly, we conclude that there was no substantial likelihood of irreparable misidentification and that the trial judge properly denied the motion to suppress her testimony. See People v. Jones, supra; People v. Knapp, 180 Colo. 280, 505 P.2d 7 (1973).

II
Defendant next maintains that the trial court committed certain errors in connection with the testimony of a prosecution witness, Robert Lee. Specifically, defendant argues the trial court abused its discretion in denying his motion for a continuance in order to obtain psychiatric evidence damaging to Lee's credibility and erroneously refused to instruct the jury regarding Lee's motives for testifying. We perceive no error.
Evidence of the mental incapacity of a witness is admissible for purposes of impeachment as it bears directly on the question of the witness' credibility. People v. Schuemann, Colo., 548 P.2d 911 (1976). However, in this case defendant failed to make an offer of proof demonstrating what effect, if any, testimony by Lee's examining psychiatrist would have on Lee's credibility. Lee had not been found insane by the psychiatrist, cf. People v. Schuemann, supra, and thus any limitation on defendant's ability to cross-examine Lee resulting from denial of the motion for a continuance did not constitute manifest prejudice requiring reversal. See People v. Cushon, Colo., 539 P.2d 1246 (1975). The trial court did not abuse its discretion in denying a continuance where the value of the evidence to be produced was merely speculative. People v. Billington, Colo., 552 P.2d 500 (1976).
Defendant's tendered instruction concerning Lee's motive in testifying stated that the testimony of Robert Lee "should be weighed with extreme caution because of the possibility of his special interest and motives to fabricate." There was nothing in the evidence to warrant the giving of this special instruction, and thus defendant's instruction was rendered unnecessary by the submission of a general instruction relating to the credibility of the witnesses. See People v. Hankin, 179 Colo. 70, 498 P.2d 1116 (1972). The better practice is to give only one integrated instruction pertaining to credibility, Lamb v. People, 181 Colo. 446, 509 P.2d 1267 (1973), and the trial court therefore properly rejected defendant's proposed instruction.

III
Defendant raises various assignments of error in connection with his sentencing. The People concede that, with respect to the charge of theft, defendant was erroneously sentenced. We therefore remand with directions for resentencing.
The defendant having been found guilty of the class 4 felony of theft, and of the class 5 felonies of conspiracy to commit theft and criminal impersonation, and having been adjudged an habitual criminal under § 16-13-101, C.R.S. 1973, the trial court sentenced him to a term of imprisonment of not more than nineteen years and seven months nor less than fourteen years and seven months on the charge of theft, which sentence exceeded the maximum term for the offense prescribed by statute, § 18-1-105(1) C.R.S. 1973, but which was within the trial court's discretion by virtue of defendant's habitual criminal conviction. See § 16-13-101(1), C.R.S. 1973. With respect to the class 5 felony convictions, defendant was sentenced to lesser concurrent terms also in excess of the statutory maximum.
Defendant argues, and the People agree that as no evidence was adduced to show that defendant employed force, threats or intimidation in accomplishing the theft the offense thus constituted a class 5 felony under § 18-4-401(5), C.R.S. 1973, rather than a class 4 felony under § 18-4-401(1)(a) and (2), C.R.S. 1973. Therefore defendant is entitled to resentencing on the charge of theft.
Further, the reduction in grade of the theft offense necessitates reversal of defendant's *960 conviction as an habitual criminal. The maximum term of imprisonment to which defendant can be sentenced for each of the class 5 felonies is five years. See § 18-1-105(1), C.R.S. 1973 (1976 Cum. Supp.). And, in order to be adjudged an habitual criminal, defendant must have been convicted of a felony the maximum penalty for which exceeds five years. As § 16-13-101(1), C.R.S. 1973 (1976 Cum. Supp.) provides:
"Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state of the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in the state penitentiary for a term of not less than twenty-five years nor more than fifty years."
Defendant's sentencing took place in April 1976. However, when, as here, finality has not attached to a judgment of conviction, a defendant is entitled to the benefits of amendatory legislation which mitigates penalties for crimes. Salas v. District Court, Colo., 548 P.2d 605 (1976). Thus, defendant's felony convictions do not fall within the ambit of the habitual criminal statute, and his conviction as an habitual criminal must be set aside.
The judgments of conviction of criminal impersonation and conspiracy to commit theft are affirmed. The judgment of conviction of the class 4 felony is reduced to conviction of a class 5 felony, and, as modified, is affirmed. The judgment adjudicating defendant an habitual criminal is reversed, and the cause is remanded with directions to resentence defendant in a manner not inconsistent with this opinion.
SMITH and VanCISE, JJ., concur.