The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Jerry Leroy OPSON,
Defendant-Appellant.

No. 78–231.

Colorado Court of Appeals,
Div. III.

Nov. 28, 1980.

Rehearing Denied Jan. 2, 1981.

Certiorari Denied Aug. 17, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Terri L. Brake, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his jury trial convictions of second degree sexual assault and sexual assault on a child. We affirm.

According to trial testimony, on September 6, 1977, the victim, a twelve-year-old girl, was riding her bicycle down an alley. As she neared its end, a man approached her and asked her to help him find his dog. He asked her to look for it in a dark space between two buildings. While she did so, "he told [her] there was a spider crawling up [her] leg, so then he grabbed [her] arm and then he pulled her shorts over and stuck his finger up into [her vagina]." By her estimates, she was with the man for from ten to thirty minutes. The victim dreamt of the assault a few days later, and in the dream pictured her assailant as wearing a moustache.

On September 15, 1977, police showed the victim a six-man photographic lineup at her home. She picked defendant's photo as that of her assailant. In the photo, defendant wore a moustache.

According to suppression hearing testimony, the victim, both at the preliminary and suppression hearings, identified the photo lineup as a reproduction of the one shown her the previous September. And, both times, from that reproduction she selected defendant's image as that of her assailant. In each instance, she also identified defendant himself as the man who had assaulted her. During the preliminary hearing identification, defendant, 46 years old, was wearing a moustache and a beard. At the suppression hearing, the victim stated that, in choosing defendant's photo, she based her decision in part on the dream and in part on her memory of the actual occurrence.

The victim's trial testimony, insofar as is pertinent here, substantially repeated that taken at the two previous hearings. She further testified that four of the photos she was shown depicted men who were wearing moustaches.

I.

On appeal, defendant first contends that the trial court erred in denying defendant's motion to suppress the in-court identification by the victim. Defendant maintains that the in-court identification was based upon the photo lineup which was tainted by the victim's having envisioned her assailant in a dream. Defendant further insists that there was not an adequate independent basis for an in-court identification. We find defendant's contentions to be without merit.

A conviction based upon eyewitness identification at trial following a pretrial photo identification will be set aside only "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The question

whether photographic identification procedures are impermissibly suggestive must be resolved in light of the totality of the circumstances. *People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976); *People v. Keelin*, 39 Colo.App. 124, 565 P.2d 957 (1977).

Defendant contends that in the instant case the question of suggestiveness is one of law, not of fact, and thus this court is not bound by the trial court's determination of that issue. We agree. But we disagree that the photo identification here involved was tainted as a matter of law.

Defendant cites no authority which holds that these circumstances give rise to impermissible suggestion. The victim's identification was, at most, only partly based upon her dream. Defendant does not assert that her basis independent of the dream is unreliable or a result of impermissible suggestion. Therefore, we cannot conclude as a matter of law that the photo identification procedure here involved was "so impermissibly suggestive as to give rise to a *very substantial likelihood* of irreparable misidentification." *Simmons, supra* (emphasis added).

■ Since the pre-trial photo identification was not, as a matter of law, tainted with impermissible suggestiveness, it was not incumbent upon the prosecution to establish at trial an independent basis for the in-court identification. *Simmons, supra; People v. Lopez*, Colo.App., 605 P.2d 69 (1979). *See generally People v. District Court*, Colo., 607 P.2d 989 (1980). Therefore, we find no error in the trial court's denial of defendant's motion to suppress the in-court identification. And, "suggestiveness [under these circumstances] may properly be left as a consideration for the jury in determining what weight to attach to the in-court identification of the defendant." *Neighbors v. People*, 171 Colo. 349, 467 P.2d 804 (1970).

## II.

Defendant next insists that the trial court erred in admitting evidence of an alleged "similar transaction," and in instructing the jury on that evidence over defendant's objections. Defendant claims that the transaction of which evidence was admitted was dissimilar because it was not shown to be criminal in nature. Defendant further argues that the court improperly instructed the jury, over his objection, as to the limited purpose of the evidence both at the time it was admitted and in the general charge.

The evidence in question pertained to an incident that occurred on September 8, 1977. In that incident, a man, identified as defendant, asked a fourteen-year-old girl if she had seen a white spaniel. He asked her to call the dog since her voice might sound like that of the twelve-year-old sister he claimed to have. The girl thought the request strange because the man looked too old to have a twelve-year-old sister. As a result, the girl left. As she was doing so, the man asked, "aren't you going to help me find my dog?"

■ Questions relating to admission of similar transactions evidence ordinarily are analyzed in the light of *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), and its progeny. However, with respect only to sexual assault cases, admission of similar transactions evidence is governed by statute. Section 16–10–301(1), C.R.S.1973 (1978 Repl. Vol. 8). Defendant urges that § 16–10–301 merely codifies *Stull* and, therefore, that we must interpret the section to have no greater or lesser scope than does *Stull* itself. To the contrary, that statutory enactment reflects a policy judgment that in sexual assault cases a need arises to make similar transactions evidence more readily available. *Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979). Thus, defendant's heavy reliance on *Stull* derived cases to which § 16–10–301 was inapplicable is misplaced.[1] Instead, the propriety of admitting the evidence defendant challenges must be ana-

---

1. We do not suggest that *Stull* derived cases can never assist in the interpretation of § 16–10–301. But, those cases may not operate to deviate from the General Assembly's intent and purpose in enacting that section. *Pigford, supra*.

lyzed in terms of compliance with the dictates of the statute.

■ While the General Assembly has acted to make similar transactions evidence more available in sexual assault cases, it has also required procedures that operate to prevent undue prejudice to defendants. Pursuant to those requirements, the prosecutor in the instant case advised the court that the evidence was offered to show modus operandi or identity. The trial court then expressly determined that the evidence was relevant for such purposes and that any possible prejudice which would result to the defendant by its introduction was outweighed by the testimony's probative value. *See* § 16–10–301(2), C.R.S.1973 (1978 Repl. Vol. 8). And, the court followed the statutory requirement that he rule, prior to admitting the evidence, that the People had established a prima facie case. *See* § 16–10–301(4), C.R.S.1973 (1978 Repl. Vol. 8). We find no abuse of discretion in these rulings. Finally, immediately prior to its admission, the court instructed the jurors that they were to consider the evidence only for the specified limited purposes. The court iterated that admonition in its general charge to the jury. *See* § 16–10–301(3), C.R.S.1973 (1978 Repl. Vol. 8). Thus, the trial court fully complied with the statutorily mandated procedure.

■ Defendant argues, though, that § 16–10–301 applies only to similar *criminal* transactions. The statute, however, refers to "acts or transactions," not to offenses or crimes, and thus permits admission of evidence of events, not necessarily criminal in nature, for the limited purposes specified.

■ Defendant next contends that the limiting instructions specified by the statute were designed for just one reason: to protect defendants by discouraging a jury's use of the evidence for an impermissible purpose. Defendant thus maintains that the prosecution has no right to insist upon the instructions if defendant objects. It is asserted that the limiting instructions tend to draw undue jury attention to the evidence and may therefore be more prejudicial than prophylactic in effect.

With reference to the giving of limiting instructions, the General Assembly employed mandatory rather than merely directory language. *See* § 16–10–301(3). And, no assertion has been made, below or in this Court, that § 16–10–301(3) is unconstitutional. The trial court, therefore, was bound to give the instructions, and the evidence was properly admitted.

### III.

Defendant contends finally that his convictions of both second degree sexual assault and sexual assault on a child, which convictions are based upon the same acts, constitute a violation of the prohibition against double jeopardy embodied in the Fifth Amendment to the United States Constitution as made applicable to the states through the Fourteenth Amendment, and in Article II of the Colorado Constitution. We disagree.

■ Defendant's contention that two felony convictions cannot be predicated upon a single act consistently with the federal constitution's double jeopardy prohibition was decided adversely to him in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931), and reaffirmed in *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). As to the state constitutional provision, the Colorado Supreme Court has expressly adopted the *Blockburger* principle. *People v. McKenzie*, 169 Colo. 521, 458 P.2d 232 (1969). And, that principle has been codified by the General Assembly. Section 18–1–408, C.R.S.1973 (1978 Repl. Vol. 8). Therefore, more than one felony conviction may, in a proper case, be based upon the same occurrence without running afoul of either federal or state double jeopardy prohibitions.

Defendant asserts, however, that where a person stands convicted of a crime, he cannot, consistent with constitutional double jeopardy prohibitions also be convicted of a lesser included offense predicated upon the same act. This is a correct statement of the law; defendant's argument, though, is unavailing.

Defendant was charged first with sexual assault on a child. The pertinent statutory provision, § 18–3–405(1), C.R.S. 1973 (1978 Repl. Vol. 8), reads as follows:

"Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim."

For purposes of the above-stated provision, "sexual contact" is defined as:

"the intentional touching of the victim's intimate parts by the actor . . . if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse."

Section 18–3–401(4), C.R.S.1973 (1978 Repl. Vol. 8).

Defendant was charged also with second degree sexual assault as defined in § 18–3–403(1), C.R.S.1973 (1978 Repl. Vol. 8). Including the specific subsection under which defendant was charged, that provision reads as follows:

"Any actor who knowingly inflicts sexual penetration or intrusion on a victim commits sexual assault in the second degree if:

. . . .

(b) The actor causes submission of the victim to sexual intrusion by any means of sufficient consequence reasonably calculated to cause submission against the victim's will . . . ."

For purposes of the above provision, "sexual intrusion" is defined as:

"any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue, or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse."

Section 18–3–401(5), C.R.S.1973, (1978 Repl. Vol. 8).

An examination of these statutes reveals that each offense contains elements not found in the other. The elements of age of the victim and comparative ages of victim and actor are part of the offense of sexual assault on a child, but are not part of the particular provision of the second degree sexual assault statute under which defendant was charged. Also, the latter offense contains the element that the act be perpetrated against the victim's will. The former offense lacks such a qualification. The trial court's charge to the jury fully reflects those statutory differences.[2] Because of such differences, at the very least, neither crime is a lesser included offense of the other.[3] *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974). *See also Brown v. Ohio,* 432 U.S. 161, 97 S.Ct 2221, 53 L.Ed.2d 187 (1977), and its reliance on *Ianelli v. U. S.,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). We conclude, therefore, that defendant was not, by his convictions under these two statutes, subjected to double jeopardy.

Judgment affirmed.

RULAND and KELLY, JJ., concur.

**2.** The jury was also instructed that in order to return a guilty verdict *as to each count,* it had to find each separate element of the distinct offense charged in each count to have been proved beyond a reasonable doubt.

**3.** The General Assembly evidently did not contemplate a difference in magnitude between the two offenses, for each constitutes a class 4 felony unless accomplished with identically specified force, intimidation or threat, in which event each constitutes a class 3 felony. Sections 18–3–404(2); 18–3–405(2), C.R.S.1973 (1978 Repl. Vol. 8).