The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Vincent Darrell GROVES, Defendant–Appellant.

No. 90CA1049.

Colorado Court of Appeals, Div. IV.

Oct. 8, 1992.

Rehearing Denied Dec. 24, 1992.

Certiorari Denied July 6, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge TURSI.

Defendant, Vincent Darrell Groves, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder. We affirm.

The victim was a prostitute who was found dead in a field in Aurora after having disappeared overnight. The autopsy report indicated that she had been strangled and sexually assaulted and that she had ingested cocaine before her death.

Contested evidence presented at trial indicated that defendant had been introduced to the victim the day before the murder, that she had intended to make money by prostitution on the day in question, and that she had been seen entering defendant's car the night of her death. Further, a witness testified that defendant admitted to him that he had choked the victim to death after she tried to steal his drugs. And, a pendant, at least similar to one owned by the victim, was found in defendant's vehicle after the murder.

Defendant denied committing the murder. However, upon his arrest, he admitted that he had picked up prostitutes on Colfax Avenue several times a month. He stated that he usually gave them money and drove them to a location to buy drugs, after which they drove to a place off of Colfax to have sex in his car.

A DNA vaginal swab from the victim was forwarded to Forensic Science Associates for polymerase chain reaction testing. The results indicated that there was a probable match with defendant's DNA.

### I.

Certain of defendant's contentions of error on appeal relate to the trial court's admission of three similar transactions at trial. This evidence was introduced by the prosecution for purposes of proving defendant's identity and modus operandi. Defendant challenges the court's ruling because of certain dissimilarities of the transactions, including differing racial backgrounds of the victims therein.

The first transaction involved the murder of defendant's former girlfriend in 1981, to which he confessed. Defendant committed this homicide by strangling the young woman, after they had ingested cocaine and had engaged in sexual intercourse.

The second transaction concerned the sexual assault of another young woman in 1982. This woman testified at trial that she was hitchhiking and that defendant mistook her for a prostitute when he picked her up on East Colfax Avenue. She agreed to have a drink with him in his truck, whereupon he drove to a remote area by the airport and parked. The defendant then threatened to kill her with a knife and gag her with his socks, and he attempted to

rape her. The victim struggled and escaped to a nearby car.

Defendant's license plate number was recorded by onlookers, and the victim identified defendant as her assailant. A search of his car yielded two knives, an opened liquor bottle, a pair of women's underwear, and a piece of electrical cord with a slip knot tied on one end of it.

Defendant admitted that he picked the victim up and that he wanted to have sex with her, but he denied assaulting or threatening her. Charges were filed against defendant regarding this incident, but they were subsequently dropped when the victim failed to appear.

The third transaction relates to the homicide of a young woman in 1988. This woman left her friend's house near East Colfax late at night after becoming intoxicated and having had a lover's quarrel. The next morning she was found in Douglas County, dead from strangulation.

DNA testing was conducted on seminal fluid found on the latter victim's underwear. An expert witness gave testimony, disputed by the defendant, that, based on this testing, she was able to identify defendant as the assailant, with odds against his misidentification gauged at 8.4 billion to one.

A fresh oil stain was also located on the pavement near this victim's body, and defendant admitted that his vehicle had an oil leak during the pertinent time frame. However, the oil was not connected to defendant's vehicle. Defendant was not charged with or convicted for commission of this homicide, and there was no other evidence connecting defendant with the crime.

Before trial, defendant sought to exclude the introduction of the similar transaction evidence by filing a motion *in limine.* Over defendant's objection, the trial court ruled that it would determine the admissibility of this evidence by its review of offers of proof rather than by evidentiary hearing.

The trial court found that the three transactions were similar enough to the crime charged to warrant their admission into evidence at trial. The defendant subsequently filed a motion to strike the second transaction evidence and a motion to reconsider admission of the remaining similar transaction evidence owing to contradictory evidence which had been uncovered. Defendant was permitted to present this evidence in an offer of proof, after which the trial court again ruled that the transactions were similar enough to the circumstances underlying the crime charged to warrant their admission as evidence of defendant's modus operandi.

### A.

Defendant contends that the trial court erred when it relied upon offers of proof to determine, by a preponderance of the evidence, that defendant committed a crime in the second transaction and that he committed the third homicide. He specifically contends that the trial court was obligated to hold an evidentiary hearing to address these issues. We disagree.

When determining preliminary questions concerning the admissibility of other crime evidence, the trial court is required to consider all of the evidence in the case and apply the preponderance of the evidence standard to decide whether it is more likely than not that the other crime occurred and that the defendant committed the crime. *People v. Garner,* 806 P.2d 366 (Colo.1991); CRE 104(a). The trial court possesses the discretion to make this determination in any reasonable manner. *See* Crim.P. 12.

The record reflects that the trial court gave each party the opportunity to present all of the evidence in the case in offers of proof and that the trial court considered all of the evidence. The record also establishes that the trial court admitted the other crime evidence after making the requisite findings pursuant to *People v. Garner, supra* and *People v. Spoto,* 795 P.2d 1314 (Colo.1990). Under these circumstances, we conclude that its determination by review of offers of proof was not an abuse of discretion.

## B.

■ Defendant also challenges the admission of the second transaction evidence on the basis that it is remote in time and is not distinctively or sufficiently similar to the crime charged to justify its admission. We disagree.

CRE 404(a) precludes the admission of evidence of the accused's character for the purpose of proving that he acted in conformity therewith. However, relevant evidence that the accused committed a similar crime may be admissible for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

■ Before admitting such evidence for the limited purposes permitted by CRE 404(b), the trial court must be satisfied by a preponderance of the evidence that: (1) the evidence relates to a material fact; (2) the evidence is logically relevant and tends to make the existence of the material fact more or less probable than it would be without the evidence; (3) its logical relevance is independent of the prohibited inference that defendant has a bad character; and (4) its probative value substantially outweighs the danger of unfair prejudice. *People v. Garner, supra; People v. Spoto, supra.*

■ For such evidence to be admissible, it is not essential that the crimes replicate each other. *People v. Garner, supra.* However, the trial court should consider the remoteness of the other crime evidence to the crime charged, *see People v. Geller,* 189 Colo. 338, 540 P.2d 334 (1975), and if other crime evidence is specifically introduced for the purpose of proving modus operandi, the trial court should determine whether the methods used in the similar transactions are distinctive and dissimilar from the methods generally used in such offenses. *People v. Crespin,* 631 P.2d 1144 (Colo.App.1981).

■ The trial court has substantial discretion when determining the admissibility of other crime evidence, and we will not overturn its determination absent an abuse

of discretion. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

A review of the record on appeal establishes that the trial court did not abuse its discretion in permitting the entry of the second transaction into evidence at the trial.

The totality of the evidence before the trial court established that the other crime evidence related to defendant's identity as the perpetrator of the crime charged and to the method of its commission, both of which constitute material facts in the case.

For instance, in the first and second instances the evidence demonstrated that defendant picked up young women on East Colfax Avenue who, he presumed, were prostitutes. After driving them to a remote area in each instance, defendant sexually assaulted his victims. Each of these assaults was accompanied with or preceded by the victim's ingestion of an intoxicant.

■ Although one of the women escaped strangulation after threat of death, the presence of an electrical cord with a slipknot in defendant's vehicle is significant inasmuch as it establishes a similar and distinct method to accomplish a homicide. Finally, the remoteness of this similar transaction evidence is rendered less significant by the showing that defendant had been incarcerated during most of the intervening years. *See Adrian v. People,* 770 P.2d 1243 (Colo.1989).

Therefore, inasmuch as the totality of the evidence demonstrates that the other crime evidence is significant to the material issues of identity, we cannot say that the trial court erred by determining that its probative value was not substantially outweighed by the danger of unfair prejudice to the defendant.

## C.

■ We conclude, however, that the trial court did abuse its discretion by admitting the third homicide evidence as a similar transaction.

The similar circumstances underlying this homicide and the crime at issue are confined to the facts that the two victims

were young women who were murdered by strangulation, bore the effects of sexual assault, and may have been in the vicinity of East Colfax Avenue before their murders. However, there is no indication that the victim had ever acted as a prostitute. Further, her body was found clothed in Douglas County. Finally, there was no evidence, prior to the DNA testing, that the victim had ever encountered the defendant.

While limited circumstances may tend to make the existence of defendant's identity through modus operandi probable, we conclude that, in significant part, absent the testing conducted because of the intermediate and prohibited inference that the defendant has a bad character and acted in conformity therewith, there was insufficient evidence of similar modus operandi. However, we do not wish to imply that if otherwise admissible, the testing would not be admissible in a prosecution involving this homicide.

■ In support of the prosecution's allegation that defendant committed the latter homicide, the trial court relied upon evidence extrapolated from DNA analysis. Although DNA evidence may be useful to show identification, it is not the type of evidence used to establish modus operandi. Thus, the remaining evidence of strangulation and sexual assault, under the totality of the circumstances here, was insufficient to establish the existence of a similar transaction by a preponderance of the evidence.

Hence, inasmuch as the evidence of this transaction necessarily implicates the bad character and propensities of the defendant, it should not have been admitted by the trial court as a similar transaction. *See People v. Garner, supra; People v. Spoto, supra.*

■ However, when viewed in light of the remaining evidence which overwhelmingly supports defendant's conviction, we conclude that this error is harmless.

Here, defendant's conviction was gained by properly admitted circumstantial evidence, including unchallenged results of DNA testing conducted on defendant's blood sample and the blood sample and vaginal swabs taken from the victim, the pendant identified as victim's which was found in defendant's vehicle, defendant's confession to a witness, the testimony of two witnesses placing defendant in the company of the victim on the night of the crime, and evidence of the other two similar transactions.

Under these circumstances in which overwhelming evidence independent of the erroneously admitted similar transaction evidence established defendant's guilt, we cannot say that the error substantially influenced the verdict or impaired the fairness of the trial. *See People v. Gaffney,* 769 P.2d 1081 (Colo.1989); *Callis v. People,* 692 P.2d 1045 (Colo.1984).

## II.

■ Defendant next contends that the trial court abused its discretion by refusing to grant him a continuance to obtain the presence of a subpoenaed witness. We are not persuaded.

An informant who was available to testify at trial allegedly informed the subpoenaed witness that someone other than defendant had murdered the victim. However, when the informant indicated before trial that he would deny his story if called upon to testify, defense counsel subpoenaed the witness to impeach the informant's denial at trial. When the subpoenaed witness failed to appear to testify, defendant sought a continuance, which the trial court denied.

■ The decision whether to grant a continuance is a matter within the sound discretion of the trial court, *People v. Garcia,* 690 P.2d 869 (Colo.App.1984), and we will not overturn its decision absent an abuse of discretion. *People v. Staten,* 746 P.2d 1362 (Colo.App.1987).

Here, defendant sought a continuance to impeach the testimony of a witness whom he had failed to call to testify. Under circumstances in which this witness' testimony was unnecessary and speculative absent the informant's testimony, we conclude that the trial court did not abuse its discretion when denying the continuance.

*See People v. Keelin,* 39 Colo.App. 124, 565 P.2d 957 (1977).

### III.

■ We also reject defendant's contention that the trial court committed reversible error by denying his motion for continuance to interview the former counsel of an adverse witness for impeachment material.

During trial, the adverse witness waived his right to his attorney-client privilege before testifying. Defendant then moved for a continuance to interview the public defender for purposes of impeaching her former client's credibility. The trial court denied the request when he learned that the attorney had not been subpoenaed to appear at trial.

The record here establishes that the possibility of confidences existing between the witness and his former attorney was speculative. Moreover, defendant failed to make an offer of proof establishing the manner in which counsel's possible information would serve to impeach the witness.

When the absence of such a record is coupled with defendant's failure to subpoena the witness, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a continuance. *See People v. Dillon,* 633 P.2d 504 (Colo. App.1981).

### IV.

■ As his final contention of error, defendant urges that the trial court committed reversible error when it did not conduct a hearing to determine whether the DNA probability methods utilized by prosecution witnesses in the 1988 murder case were generally accepted by the scientific community.

In *People v. Fishback,* 829 P.2d 489 (Colo.App.1991) *(cert. granted* May 11, 1992), this court recently held that the results of DNA testing are admissible both as opinion evidence which is founded on a well-recognized scientific principle which has gained general acceptance in the particular field in which it belongs and as scientific evidence which will assist the jury in understanding the evidence or determining a fact at issue. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923) and CRE 702.

Here, however, we need not determine whether this DNA evidence satisfies either the *Frye* test, *see People v. Castro,* 144 Misc.2d 956, 545 N.Y.S.2d 985 (Sup.Ct. 1989), or CRE 702. The challenged DNA evidence relates solely to the similar transaction evidence the admission of which was harmless error. Accordingly, under the totality of the evidence properly admitted, we conclude that any 'error resulting from the trial court's failure to conduct a preliminary *Frye* test on that evidence is likewise harmless. Crim.P. 52(a).

The judgment is affirmed.

METZGER and PLANK, JJ., concur.