The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

James Jay DOKE, Defendant–Appellee.

No. 07SA247.

Supreme Court of Colorado,
En Banc.

Nov. 26, 2007.

Kenneth R. Buck, District Attorney, Nineteenth Judicial District, Matthew Pring, Deputy District Attorney, Greeley, Colorado, Attorneys for Plaintiff–Appellant.

Robert E. Ray, John J. Briggs, Greeley, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2007), seeking to reverse the trial court's ruling suppressing testimonial evidence regarding sheriff's deputies' unsuccessful attempt to serve Defendant James Doke with civil process that culminated in an armed standoff, and physical evidence seized from Doke's home following the incident. Doke is charged with menacing three sheriff's deputies with a shotgun when they approached and opened the back door of his home during an attempt to serve him with civil process. The trial court suppressed all the evidence obtained and observed based on its conclusion that the deputies were illegally on Doke's property. The court ruled that the deputies violated Doke's rights under the Fourth Amendment and that their observations while on his property and items seized pursuant to a later search warrant were the fruits of the deputies' illegal search. The court ordered suppression of this evidence under the derivative evidence rule, which requires the exclusion of evidence that is derived from, or is the "fruit" of, police conduct in violation of the Fourth Amendment.

We need not decide whether the deputies violated Doke's Fourth Amendment rights by illegally entering his property because Doke allegedly menaced the deputies with a shotgun. Evidence of this new crime, menacing, is admissible even if the new crime was in response to an illegal search. Hence, we reverse the trial court's order granting the motion to suppress and remand this case to

the trial court for proceedings consistent with this opinion.

## II. Facts and Procedural History

Three Weld County sheriff's deputies arrived at James Doke's home to serve him with civil process. The deputies were in uniform. Serving process for members of the public was among their regular duties. Three deputies were assigned to this task because the sheriff's department had previous experience with Doke's avoiding civil process and being uncooperative with law enforcement officers.

Doke's property is in a rural area of Weld County. His home is one of several structures on the property, and he operates a sod farm on the property. The residence is partially visible from an adjacent county road. A sign posted in the driveway reads "No Trespassing—Stop." At the front door, a second "No Trespassing" sign hangs above the doorbell. No gates or fences block the entry of the property or the residence.

The deputies rang the front doorbell. There was no response but they observed movement within the home. After several minutes, they walked on a paved pathway to the back of the home and then up the stairs of the back porch. Through a window in the back door, one of the deputies identified Doke inside the residence sitting in a recliner chair with his eyes closed. The deputy identified himself from outside the door and pounded on the door, but Doke remained seated with his eyes closed. The deputy remained on the porch and attempted to elicit a response from Doke for approximately ten minutes.

Another deputy contacted the commander and advised that there may be a medical problem because Doke was not responding. The commander recommended that the deputies open the door to determine if Doke was stable, but to wait for a medical unit to arrive. One of the deputies opened the back door six to eight inches and announced that he was a sheriff's deputy there to serve papers. He closed the door when a large dog approached but then reopened the door and announced that he was calling for a medical unit. The deputies did not call for medical assistance at any time during the incident.

At that point Doke opened his eyes. He looked at the deputy and grabbed a shotgun located by the front door. The deputies withdrew from the doorway and ordered Doke to put down the gun. Doke locked his door and remained inside despite numerous orders to come out. Ultimately, a SWAT team entered the residence and arrested Doke.

Later that night, a fourth deputy prepared an affidavit in support of a search warrant based on information given by the three deputies present during the incident. A warrant was issued, and the search revealed a twelve-gauge shotgun.[1] The deputy conducting the search also took photographs and video of the property.

Doke is charged with three counts of menacing and one count each of obstructing a peace officer and failure to leave premises or property upon request of a peace officer.[2] Doke filed a motion to suppress all statements he made to law enforcement and all the evidence police obtained from him because the evidence and the statements were obtained illegally. He filed a second motion seeking to suppress evidence obtained pursuant to a search warrant, including items seized from the residence and all visual observations made during the search, because the affidavit in support of the warrant was based on the illegal entry.

The trial court agreed with Doke and granted both motions to suppress. The court reasoned that the deputies violated Doke's Fourth Amendment rights because Doke had a legitimate expectation of privacy in his residence and curtilage, and he did not

---

1. The search also uncovered six steel tear gas canisters. The trial court suppressed this evidence because it was not listed in the search warrant, and the record did not indicate how or where the canisters were located. The People do not contest this portion of the trial court order.

2. Doke was also charged with three counts of assault in the first degree, but those charges have been dismissed.

expressly or impliedly hold this area open to casual visitors. Because all of the evidence obtained by the deputies while on the property was directly connected to the illegal entry, the court ruled that the constitutional violation required suppression. The court also ruled that the search warrant and subsequent search were direct fruits of the illegal entry and suppressed the items seized pursuant to the warrant.

The two motions to suppress and the trial court's order do not specifically enumerate the items of evidence and the precise observations of the deputies which must be suppressed. Our review of the record indicates that the suppression order includes at least the following: (1) items seized pursuant to the search warrant, including a shotgun; (2) video and photographs taken while the sheriff's department executed the search warrant; (3) evidence of Doke's arrest; and (4) the deputies' testimony about anything that occurred while they were on Doke's property, including testimony about any statements made or actions taken by Doke.

### III. Analysis

■ This case turns on the issue of whether a person confronted with an unreasonable search or seizure by a law enforcement officer may respond by a threat of violence against the officer, and then rely on the exclusionary rule to suppress evidence pertaining to that criminal act.

As an initial matter, we need not reach the issue of whether the deputies violated Doke's Fourth Amendment rights because the evidence sought to be suppressed is admissible as we explain below, irrespective of whether the deputies committed an unconstitutional trespass. For the purpose of this analysis we assume but do not decide that the sheriff's deputies unconstitutionally conducted an illegal trespass and entry of Doke's property and residence.

In cases where a defendant responds to an alleged Fourth Amendment violation with a physical attack or threat of attack upon the officer making the illegal arrest or search, courts have consistently held that evidence of this new crime is admissible. *State v. Aydelotte*, 35 Wash.App. 125, 665 P.2d 443, 447 (1983) ("All courts which have considered this issue ... agree that evidence of post-entry assaults on police officers are outside the scope of the exclusionary rule."); 6 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* 377, § 11.4(j) (4th ed.2004).

Our court of appeals, in a somewhat analogous factual scenario, has held that "if, following an illegal stop or attempted stop, the detained person's response is itself a new, distinct crime, then the police constitutionally may arrest the person for that crime and the evidentiary fruit of that arrest will not be suppressed." *People v. Smith*, 870 P.2d 617, 619 (Colo.App.1994) (holding that evidence of the new crimes of eluding a police officer and criminal mischief is admissible when defendant fled police and rammed police car, assuming officer's attempted stop of defendant's vehicle was an illegal seizure). The *Smith* court relied upon the decision in *United States v. Bailey*, 691 F.2d 1009 (11th Cir.1982). In that case, the court held "police may legally arrest a defendant for a new, distinct crime, even if the new crime is in response to police misconduct and causally connected thereto." *Id.* at 1017–18. When "a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime." *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir.1997) (internal quotation omitted).

This rule has been consistently followed by other courts addressing the issue. *See, e.g., State v. Courville*, 313 Mont. 218, 61 P.3d 749, 754 (2002) (holding that evidence of criminal conduct after illegal stop is admissible); *State v. Miskimins*, 435 N.W.2d 217, 221 (S.D.1989) (holding that unlawful entry into home does not require suppression of evidence of assault with loaded shotgun); *State v. Mierz*, 127 Wash.2d 460, 901 P.2d 286, 294 (1995) (holding that unlawful entry or arrest by officers does not foreclose admission of evidence of assaults against the officers); *see also* LaFave, *supra*, at 375–80 (collecting numerous cases applying this rule).

When a defendant commits an independent and willful criminal act against a law enforcement officer, most courts reason that the new act breaks the causal connection between the police illegality and the evidence of the new crime so that sufficient attenuation occurs to treat evidence of the new crime as admissible, and therefore the evidence should not be suppressed under the derivative evidence rule.[3] For example, in a case involving a defendant who led officers on a high speed chase and then fired a gun at the officers following an illegal stop, the North Dakota Supreme Court reasoned that the defendant's "independent and intervening actions" dissipated the taint of the illegal stop and broke the chain of causation between the illegal stop and evidence of the new crime. *State v. Indvik,* 382 N.W.2d 623, 627 (N.D. 1986). Similarly, in *Miskimins,* the court concluded that a criminal act that is independent of the primary illegality "may have so attenuated the causal connection as to dissipate the taint of the unlawful police action." 435 N.W.2d at 221. Suppression of evidence under the derivative evidence rule does not depend on a simple "but for" causal connection; thus, even if the criminal conduct would not have occurred but for the police misconduct, these cases do not involve police exploitation of their own misconduct. *Mierz,* 901 P.2d at 293.

■■■ The attenuation rationale for admitting evidence of a new crime committed in response to police misconduct is consistent with our case law applying the attenuation exception to the exclusionary rule. The exclusionary rule requires suppression of evidence obtained in violation of the Fourth Amendment. The derivative evidence rule also requires suppression of evidence derived from the primary illegal evidence. *People v. Medina,* 25 P.3d 1216, 1226 (Colo.2001). However, it is well settled that the exclusionary rule does not apply in every instance of police misconduct. To determine whether evidence is the "fruit" of illegal police conduct, we do not use a "but for" test. Evidence is not necessarily excluded "simply because it would not have come to light but for the illegal action of the police." *People v. Lewis,* 975 P.2d 160, 170 (Colo.1999). To determine whether evidence was obtained as a direct result of police illegality, we consider whether the evidence was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *People v. Rodriguez,* 945 P.2d 1351, 1363–64 (Colo.1997) (quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Evidence obtained in connection with an illegal search or seizure is admissible "when the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." *Lewis,* 975 P.2d at 170 (internal quotation omitted).

When Doke allegedly menaced the deputies with a shotgun, his independent and intervening criminal action dissipated the taint of the prior illegality. While there may be a "but for" causal connection because the act was provoked by the misconduct of the police, Doke's intervening criminal act breaks the causal chain.

Thus, we hold that Doke's allegedly criminal acts are sufficiently attenuated from any illegal conduct of the deputies so that exclusion is not appropriate. To hold otherwise would stretch the exclusionary rule beyond its reasonable limits. Because the primary purpose of the rule is to deter police misconduct, the rule should only be applied in situations where it is likely to have a deterrent effect. *People v. Blehm,* 983 P.2d 779, 794 (Colo.1999). The deterrent effect of applying the exclusionary rule in cases where the accused has committed a crime against police

3. We note that the Tenth Circuit has reached the same result using a different rationale. For that court, the key question is whether the defendant initiated the criminal act with a legitimate expectation of privacy. *United States v. Waupekenay,* 973 F.2d 1533, 1537 (10th Cir.1992). The court reasoned that even if a defendant has a legitimate expectation of privacy in his home, once he is aware that police officers are present, he could not have a reasonable expectation of privacy for any actions subsequently initiated. *Id.* Indeed, when a defendant attacks or threatens to attack an officer, he generally intends the officer to see him and does not intend the act to be private. *Id.* The court concluded that where there is no legitimate expectation of privacy, there is no Fourth Amendment violation; thus, evidence of the new crime need not be excluded. *Id.*

officers in response to police misconduct would be minimal. Admitting evidence of the crime does not provide police with an incentive to conduct illegal searches.

We also note that a holding contrary to the one we reach today would effectively give the victim of police misconduct carte blanche to respond with any means, however violent. To exclude such evidence would "virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Bailey,* 691 F.2d at 1017. A rule that would allow a person whose right to be free from unreasonable searches and seizures was allegedly violated to respond with acts of violence would be contrary to the public interest.

## IV. Conclusion

Accordingly, we hold that Doke's allegedly criminal acts are sufficiently attenuated from any illegal conduct of the deputies so that exclusion is not appropriate. We therefore reverse the trial court's order granting Doke's motions to suppress and remand the case to the trial court for proceedings consistent with this opinion.