JUSTICE MÁRQUEZ delivered the Opinion of the Court.
¶ 1 Colorado law requires certain juvenile offenders to submit to collection of their DNA for testing. § 19-2-925.6(1), C.R.S. (2018). However, this requirement "shall not apply to an offender granted a deferred adjudication, unless otherwise required to submit to a sample pursuant to [ section 19-2-925.6 ] or unless the deferred adjudication is revoked and a sentence is imposed." § 19-2-925.6(1)(e).
¶ 2 In 2008, a juvenile probation officer swabbed the cheek of Petitioner Ismael Casillas, then a juvenile, to collect a DNA sample. The probation officer's collection of Casillas's DNA violated section 19-2-925.6(1) because Casillas had been granted a one-year deferred adjudication and he was not otherwise required under the statute to submit a DNA sample. His genetic markers were nevertheless uploaded to the federal Combined DNA Index System (CODIS).
¶ 3 Several months after Casillas successfully completed the terms of his deferred adjudication and his juvenile case had been dismissed, law enforcement investigators matched DNA evidence recovered from a stolen vehicle with the sample in the CODIS database taken from Casillas during his juvenile *807 deferred adjudication. As a result of the DNA match, Casillas was identified and charged in connection with a carjacking.
¶ 4 Before trial, Casillas moved to suppress all evidence derived from the DNA match, arguing that evidence derived from the unauthorized cheek swab should be excluded as the fruits of an unlawful search in violation of his Fourth Amendment rights. The trial court denied the motion, and a jury later convicted Casillas of criminal mischief.
¶ 5 Casillas challenged the trial court's suppression ruling on appeal. In a published, split ruling, the court of appeals affirmed Casillas's conviction. People v. Casillas, 2015 COA 15, --- P.3d ----. The division unanimously held that the cheek swab violated both the juvenile DNA collection statute and the Fourth Amendment. See id. at ¶¶ 3, 18, 22, 41. The majority held that suppression was nevertheless unwarranted because the officer who performed the cheek swab was "performing nothing more than a supervisory function under the direction of the juvenile court," and therefore, suppression "would have no deterrent value." Id. at ¶ 38. Judge Webb dissented, concluding that Casillas's motion to suppress should have been granted. Id. at ¶¶ 42, 54 (Webb, J., dissenting).
¶ 6 We granted Casillas's petition for a writ of certiorari to review whether the exclusionary rule requires suppression of the evidence derived from the juvenile probation officer's unauthorized collection of Casillas's DNA in this case.[1] We conclude that it does. Accordingly, we reverse and remand with instructions to vacate Casillas's conviction.
I. Facts and Procedural History
¶ 7 In June 2008, Petitioner Ismael Casillas, then a juvenile, entered into a stipulated, one-year deferred adjudication for drug possession. The stipulation required him to be under the supervision of the juvenile probation department. Soon thereafter, a juvenile probation officer subjected Casillas to a buccal swab (commonly referred to as a "cheek swab")[2] and entered his genetic markers into CODIS.[3] Why the officer took the swab remains unknown; nothing in the record sheds light on his reasons for doing so. Casillas eventually successfully completed the terms of his deferred adjudication, and his case was dismissed with prejudice in May 2009.
¶ 8 Several months later, three young men ambushed an older man and stole his car. Within hours, the victim's car was found wrecked. A crime scene investigator discovered blood stains on the inside of the front passenger door, and the police submitted samples of this blood evidence to the Colorado Bureau of Investigation (CBI) for testing against DNA profiles in CODIS. This testing revealed that the blood evidence found in the car matched the profile for Casillas.
¶ 9 In the process of comparing the blood evidence against profiles in CODIS, a CODIS administrator for the CBI learned that Casillas had not been eligible for DNA testing. The CODIS administrator nevertheless informed the detective who was investigating the carjacking of the match, noting that Casillas's DNA had been collected for previous offenses that did not qualify for CODIS entry. Based on the CODIS match, the detective proceeded to include Casillas in a photo array presented to the carjacking victim. The victim identified Casillas in the photo array *808 as one of his assailants. As a result, Casillas was arrested and charged with aggravated robbery and menacing.
¶ 10 Before trial, Casillas moved to suppress the DNA and photo array identification, arguing that the collection of his DNA and uploading of his genetic markers to CODIS was statutorily unauthorized and violated his Fourth Amendment rights. At the suppression hearing, Casillas presented email correspondence showing that, when the blood evidence from the stolen car was matched with his DNA profile in CODIS, the CBI's CODIS administrator realized that Casillas's DNA profile had been improperly uploaded into the system. The CODIS administrator contacted a probation analyst with the State Court Administrator's Office to confirm, writing: "It looks like I have another CODIS hit to an offender with a deferred sentence.... It looks like he was not eligible, but I need you to confirm that." The probation analyst responded, confirming that Casillas was a juvenile "under a deferred adjudication for ... a felony drug charge," that he "successfully completed his deferred adjudication," and that Casillas therefore was "not eligible for DNA testing on this case." Casillas also presented records reflecting that the detective who included Casillas in the photo array based on the DNA match knew that the match was based on a "non-qualifying offense submission." Records admitted at the suppression hearing further showed that, the same day the CODIS administrator disclosed the match to the detective, Casillas's DNA profile was expunged from the CODIS database, apparently at the request of the probation analyst from the State Court Administrator's Office. The juvenile probation officer who took Casillas's cheek swab did not testify.
¶ 11 Casillas argued that the buccal swab conducted by the juvenile probation officer was an unlawful search under the Fourth Amendment, and that both the DNA identification and photo-array identification should be excluded as fruits of an unlawful search and seizure of his genetic markers. The People conceded that the collection of Casillas's DNA was not authorized under section 19-2-925.6, but argued that suppression was unwarranted as a remedy for the statutory violation. In so doing, the People did not contend that the probation officer took the cheek swab as the result of a good faith mistake of fact or law. See § 16-3-308, C.R.S. (2018) (permitting proponent of evidence to argue that evidence seized by a peace officer was the result of a "good faith mistake" or "technical violation" and thus should not be suppressed). Instead, the People argued that the buccal swab was justified under the "special needs" exception to the warrant requirement under the Fourth Amendment, citing People v. Shreck, 107 P.3d 1048, 1052 (Colo. App. 2004).
¶ 12 The trial court denied Casillas's motion. In its written order, the court noted that it was not given a copy of the order placing Casillas on a deferred adjudication, and inaccurately described Casillas as having been "placed on probation." From this mistaken factual premise, the court reasoned that the cheek swab did not violate the juvenile DNA collection statute because section 19-2-925.6(1)(e)(III) indicates that a sample may be taken from a juvenile felony offender who is "sentenced to probation." The trial court further reasoned that, even if the search was not statutorily authorized, suppression was unwarranted because there was no evidence of willful or recurring violation of the statute. The court also agreed with the People that the search was justified under the special needs exception to the warrant requirement, and therefore did not violate the Fourth Amendment. At trial, a jury ultimately convicted Casillas of criminal mischief (a lesser non-included offense) but acquitted him of all other counts. The court sentenced Casillas to six years of probation.
¶ 13 In a divided opinion, the court of appeals affirmed the trial court's suppression ruling, but on different grounds. People v. Casillas, 2015 COA 15, ¶ 41, --- P.3d ----. The division unanimously held that Casillas's cheek swab violated the juvenile DNA collection statute because: (1) it was undisputed that the juvenile court had granted Casillas a deferred adjudication; (2) he was not required to submit a DNA sample under another section of the juvenile DNA collection statute; and (3) he had successfully completed *809 his deferred adjudication. See id. at ¶¶ 3, 18, 41. It also unanimously held that the cheek swab was an unreasonable search under the Fourth Amendment. See id. at ¶¶ 22, 41. The division majority held that suppression was nevertheless unwarranted because the officer who performed the cheek swab was "performing nothing more than a supervisory function under the direction of the juvenile court," and therefore, suppression "would have no deterrent value." Id. at ¶¶ 38, 41. Accordingly, the division majority affirmed Casillas's conviction. Id. at ¶¶ 3, 41.
¶ 14 Judge Webb dissented, disagreeing with the majority's assertion that a juvenile probation officer performs a merely supervisory function for the juvenile court and instead reasoning that juvenile probation officers have broad law enforcement powers. Id. at ¶¶ 43-44 (Webb, J., dissenting). He argued that juvenile probation officers have a stake in law enforcement activities because they provide information for arrest warrants, execute arrest warrants, take suspects into temporary custody, and otherwise enforce the laws of the state. Id. at ¶ 47. He also noted that the prosecution could have, but did not, invoke the statutory "good faith mistake" exception under section 16-3-308, and thus, any lack of explanation in the record regarding the probation officer's reason for taking the cheek swab weighs in favor of-not against-suppression. Id. at ¶¶ 51-52. Because suppression would deter future violations, Judge Webb concluded, Casillas's motion to suppress should have been granted. Id. at ¶¶ 50-54.
¶ 15 We granted Casillas's petition for a writ of certiorari to review the court of appeals' opinion. The People did not file a cross-petition to challenge the court of appeals' conclusions that Casillas's cheek swab violated the juvenile DNA collection statute and the Fourth Amendment.
II. Analysis
¶ 16 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" for purposes of the Fourth Amendment. Maryland v. King, 569 U.S. 435, 446, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013).
¶ 17 Here, the court of appeals unanimously concluded that Casillas's cheek swab violated both the juvenile DNA collection statute and the Fourth Amendment. The People do not challenge these conclusions. Thus, the sole question is whether the evidence derived from the unauthorized cheek swab should be suppressed.
A. Standard of Review
¶ 18 When reviewing a lower court's ruling on a suppression motion, this court is presented with mixed issues of law and fact. People v. Martin, 222 P.3d 331, 334 (Colo. 2010). Where sufficient evidence exists in the record to support a trial court's findings of fact, we defer to those findings. People v. Kutlak, 2016 CO 1, ¶ 13, 364 P.3d 199, 203. But the trial court's conclusions of law-i.e., the legal effect of those factual findings-we review de novo. See id.
B. Exclusionary Rule
¶ 19 "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands...." United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Nonetheless, to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures, the Supreme Court developed the exclusionary rule. Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (citing United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ). When applicable, the exclusionary rule "forbids the use of improperly obtained evidence at trial," Herring v. United States, 555 U.S. 135, 139, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), as well as "evidence later discovered and found to be derivative of an illegality," Utah v. Strieff, --- U.S. ----, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016) (quoting Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ). The rule, which operates as a judicially created remedy, seeks to safeguard Fourth Amendment rights generally *810 through the rule's deterrent effect. Leon, 468 U.S. at 906, 104 S.Ct. 3405.
¶ 20 Recently, this court has used language suggesting that exclusion necessarily follows from an unlawful search. See, e.g., People v. Zuniga, 2016 CO 52, ¶ 14, 372 P.3d 1052, 1057 ("If a warrantless search violates the Fourth Amendment ... then the remedy is suppression of the evidence obtained."); People v. Ackerman, 2015 CO 27, ¶ 12, 346 P.3d 61, 65 ("If a [search] violates the Fourth Amendment, then its results constitute fruit of the poisonous tree and must be suppressed based on the exclusionary rule.").
¶ 21 However, "the exclusionary rule should not automatically apply every time a Fourth Amendment violation is found...." People v. Gutierrez, 222 P.3d 925, 941 (Colo. 2009). Because "the exclusionary rule is intended to deter improper police conduct[,]" it "should not be applied in cases where the deterrence purpose is not served, or where the benefits associated with the rule are minimal in comparison to the costs associated with the exclusion of probative evidence." People v. Altman, 960 P.2d 1164, 1168 (Colo. 1998) (internal quotation marks omitted); see also Davis v. United States, 564 U.S. 229, 237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (noting that the rule's operation is limited to situations in which its deterrent purpose is served); Herring, 555 U.S. at 141, 129 S.Ct. 695 (holding that "the benefits of deterrence must outweigh" the heavy costs of excluding reliable and trustworthy evidence bearing on guilt or innocence).
¶ 22 Because the exclusionary rule "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," to warrant its application, law enforcement conduct must be "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144, 129 S.Ct. 695. The pertinent analysis of deterrence and culpability is objective and does not inquire into an officer's subjective intent. Id. at 145, 129 S.Ct. 695. Rather, the inquiry is " 'confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " Id. (quoting Leon, 468 U.S. at 922 n.23, 104 S.Ct. 3405 ). Evidence should be suppressed, for example, where "the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Krull, 480 U.S. at 348-49, 107 S.Ct. 1160 (quoting United States v. Peltier, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) ).
C. Suppression Is Warranted Here
¶ 23 The People note that the U.S. Supreme Court has held that suppression is generally inappropriate where the Fourth Amendment violation results not from police misconduct, but instead from an error within the judicial branch. In Leon, for example, the Court rejected suppression as a remedy where officers acted in reasonable reliance on a search warrant that was issued by a neutral magistrate but was later found to be unsupported by probable cause. 468 U.S. at 900, 913, 922, 104 S.Ct. 3405. The Court reasoned that the exclusionary rule is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916, 104 S.Ct. 3405 ; see also Massachusetts v. Sheppard, 468 U.S. 981, 990, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) (rejecting suppression where search warrant was invalid but "it was the judge, not the police officers, who made the critical mistake"). Similarly, in Arizona v. Evans, 514 U.S. 1, 14, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the Court held that suppression was not warranted where an officer's unlawful seizure stemmed from a mistake by court employees. There, the officer acted in reliance on an outstanding arrest warrant that in fact had been quashed. Id. at 4, 115 S.Ct. 1185. The error was traced to the court clerk's office, which had failed to notify the sheriff's office to update its computer records. Id. at 4-5, 115 S.Ct. 1185. The Court reasoned that exclusion of the evidence seized during the arrest would not deter future mistakes by court employees because unlike police officers, "court clerks are not adjuncts to the law enforcement team" engaged *811 in "ferreting out crime," and "have no stake in the outcome of particular criminal prosecutions." Id. at 15, 115 S.Ct. 1185 ; see also Krull, 480 U.S. at 350-51, 107 S.Ct. 1160 ; People v. Gall, 30 P.3d 145, 150 (Colo. 2001) ("Because neutral judicial officers have no stake in the outcome of particular criminal proceedings, the threat of exclusion cannot be expected to significantly modify their behavior."). Nor could suppression reasonably be expected to alter the behavior of the arresting officer, who simply relied on the police computer records. Evans, 514 U.S. at 15, 115 S.Ct. 1185.
¶ 24 The People rely on this line of case law to argue that suppression is unwarranted here because the juvenile probation officer who performed the cheek swab is akin to the court employee in Evans for whom suppression would have no appreciable deterrent effect. We disagree for three reasons.
¶ 25 First, in the cases relied on by the People, the law enforcement official who conducted the search acted in reasonable reliance on information provided by a third party-in those cases, a court official or court employees. That information later proved to be inaccurate, because the third party-not the officer-made a mistake. Suppression served no appreciable deterrent purpose in those cases because the officers who conducted those searches had no reason to question the validity of the warrants under which they acted or otherwise suspect they were not complying with the law. In short, there was "no police illegality and thus nothing to deter." Leon, 468 U.S. at 921, 104 S.Ct. 3405. "Penalizing the officer for the [third party]'s error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921, 104 S.Ct. 3405 ; see also Herring, 555 U.S. at 137-39, 144-45, 129 S.Ct. 695 (rejecting suppression where officer relied on outdated warrant in police records and mistake was attributed to the "nonrecurring and attenuated negligence" of another police employee).
¶ 26 Nothing in the record here, however, suggests the juvenile probation officer who performed Casillas's cheek swab did so in reasonable reliance on misinformation provided by a third party. Unlike the magistrate in Leon, the court employee in Evans, or even the fellow police employee in Herring-third parties who provided erroneous information to the law enforcement officer who conducted the search-the juvenile probation officer here performed the cheek swab and collected Casillas's DNA himself. Thus, the error giving rise to the unlawful search and seizure was not attenuated; suppression here would target the officer's own mistake, not someone else's.
¶ 27 Second, although juvenile probation officers are appointed by the court, see § 19-2-204(1) - (2), C.R.S. (2018), they are much more akin to "adjuncts to the law enforcement team" than judicial officers or court clerk employees, see Krull, 480 U.S. at 348, 350-51, 107 S.Ct. 1160 ; Leon, 468 U.S. at 917, 104 S.Ct. 3405. As noted by Judge Webb in his dissent, juvenile probation officers have broad law enforcement powers. Casillas, ¶ 43 (Webb, J., dissenting). Like a law enforcement officer, a juvenile probation officer is considered a "peace officer" under Colorado law. § 16-2.5-101(1), (3), C.R.S. (2018); § 19-2-926(4), C.R.S. (2018); cf. Minnesota v. Murphy, 465 U.S. 420, 432, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (recognizing that a probation officer "is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers" (internal quotation marks omitted) ). As peace officers, juvenile probation officers have "authority to enforce all laws of the state of Colorado" and may carry firearms while performing their duties. § 16-2.5-101(1), (2). Moreover, juvenile probation officers may take juveniles into temporary custody, see § 19-2-502(3), C.R.S. (2018), and may execute arrest warrants, see § 19-2-503, C.R.S. (2018).
¶ 28 Third, we disagree that the officer here was "performing nothing more than a supervisory function under the direction of the juvenile court."See Casillas, ¶ 38. CODIS exists to allow law enforcement to match DNA found at crime scenes with genetic profiles in the database in order to identify suspected perpetrators of crimes. A cheek swab performed to collect an individual's DNA for entry into the CODIS database *812 therefore serves an inherent law enforcement purpose.
¶ 29 In their answer brief to this court, the People argue for the first time that suppression is unwarranted because the cheek swab was taken as a result of the juvenile probation officer's reasonable mistake of law. See Heien v. North Carolina, --- U.S. ----, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014) ("[W]e have looked to the reasonableness of an officer's legal error in the course of considering the appropriate remedy for a constitutional violation...."). We disagree.
¶ 30 Heien addressed an officer's misinterpretation of the law as it pertained to whether there was any Fourth Amendment violation at all. 135 S.Ct. at 539 ("Here, ... the mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place."). In other words, in Heien, the officer's misunderstanding of the law factored into whether the seizure itself was reasonable. But that is not the question before us. Here, a court has concluded that the cheek swab taken by the juvenile probation officer was an unreasonable search under the Fourth Amendment. The People do not challenge that ruling. The only question is whether the exclusionary rule applies.
¶ 31 Notably, the two cases cited in Heien for the proposition that suppression is not warranted because of an officer's reasonable mistake of law concerned situations where an officer reasonably relied on binding appellate case law that was subsequently overturned, Davis, 564 U.S. at 232, 131 S.Ct. 2419 (holding that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule"), or an officer enforced an existing statute that was later deemed unconstitutional, Krull, 480 U.S. at 350, 107 S.Ct. 1160 (reasoning that suppression would have little deterrent effect where officer "simply fulfilled his responsibility to enforce the statute as written" and statute was later declared unconstitutional). See Heien, --- U.S. ----, 135 S.Ct. at 539. Neither case concerned the officer's misinterpretation of the law; rather, in both Davis and Krull, the officer followed binding case law or the statute as written. The "mistake" of law in those cases, therefore, was not a question of the officer's interpretation, but rather, the fact that the law on which the officer relied was later deemed invalid-something the officer could not have foreseen. For that reason, suppression was not warranted in those cases.
¶ 32 Here, by contrast, the People do not contend that the juvenile probation officer reasonably followed the law as written but was mistaken as to its constitutionality. Rather, the People argue that the officer reasonably misinterpreted the law. But the search performed here was not based on any objectively reasonable interpretation of the statute. Cf. Heien, 135 S.Ct. at 539-40 (2014) (noting that although the Fourth Amendment tolerates objectively reasonable mistakes of law, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce"). As recognized by the CBI's CODIS administrator, confirmed by the probation analyst at the State Court Administrator's Office, and conceded by the People below, the cheek swab taken by the juvenile probation officer violated the juvenile DNA collection statute because Casillas was under a deferred adjudication and he was not otherwise required under section 19-2-925.6 to submit a DNA sample. He was never "sentenced to probation"; he was placed under the supervision of the juvenile probation office as a condition of his deferred judgment.
¶ 33 Importantly, the statutory violation here concerned the propriety of the search itself, directly implicating Casillas's Fourth Amendment rights. See People v. McKinstry, 843 P.2d 18, 20 (Colo. 1993) ("[W]here an officer has obtained evidence in violation of a statute or regulation, the exclusionary rule is not triggered unless the unauthorized conduct also amounts to a constitutional violation."). Moreover, the Colorado Children's Code generally gives heightened protection to juvenile privacy. For instance, the legislative declaration to the Children's Code Records and Information Act, which governs, among other things, access to juvenile delinquency *813 records, recognizes that information obtained through juvenile proceedings "is highly sensitive and has an impact on the privacy of children," and that "[t]he disclosure of sensitive information carries the risk of stigmatizing children." § 19-1-302(1)(a), C.R.S. (2018). Consistent with this declaration, the Children's Code severely limits access to juvenile arrest, criminal, and probation records. See § 19-1-304(2)(b.5)-(c), C.R.S. (2018). In sum, a reasonably well-trained juvenile probation officer-familiar with the provisions of the Children's Code-should have known that the search of Casillas was illegal under the circumstances. See Herring, 555 U.S. at 145, 129 S.Ct. 695 ; Leon, 468 U.S. at 922 n.23, 104 S.Ct. 3405.
¶ 34 As discussed above, the deterrence benefits of exclusion, and thus the rule's application, depend on the culpability of the law enforcement conduct at issue. Davis, 564 U.S. at 238, 131 S.Ct. 2419. When the police act with "deliberate, reckless, or grossly negligent" disregard for Fourth Amendment rights, "or in some circumstances recurring or systemic negligence," Herring, 555 U.S. at 144, 129 S.Ct. 695, then the benefits of exclusion "tend to outweigh the resulting costs," Davis, 564 U.S. at 238, 131 S.Ct. 2419 (citing Herring, 555 U.S. at 144, 129 S.Ct. 695 ). Put differently, "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " Herring, 555 U.S. at 143, 129 S.Ct. 695 (quoting Krull, 480 U.S. at 348-49, 107 S.Ct. 1160 ).
¶ 35 Here, the juvenile probation officer who performed the buccal swab "may properly be charged with knowledge[ ] that the search was unconstitutional under the Fourth Amendment." Id. Moreover, the record suggests this was not an isolated incident, given the email from the CBI's CODIS administrator to the probation analyst at the State Court Administrator's Office, acknowledging: "It looks like I have another CODIS hit to an offender with a deferred sentence" (emphasis added).
¶ 36 Finally, we conclude that suppression would have a deterrent effect. The goal of the exclusionary rule is to "remov[e] inducements to unreasonable invasions of privacy." Leon, 468 U.S. at 900, 104 S.Ct. 3405. Indeed, the exclusionary rule "compel[s] respect for the constitutional guaranty in the only effectively available way-by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Left undisturbed, the court of appeals' decision would have the opposite effect: "[e]xempting evidence illegally obtained by a [juvenile probation] officer from the exclusionary rule would greatly increase the temptation to use the [juvenile probation] officer's broad authority to circumvent the Fourth Amendment." United States v. Payne, 181 F.3d 781, 788 (6th Cir. 1999). Given that law enforcement would benefit from the ability to identify more suspected perpetrators of crimes if the database were more comprehensive, and without the risk that unlawfully obtained evidence would be excluded from future criminal prosecutions, the incentive exists to take DNA from every juvenile whether authorized or not. This is the kind of constitutional hazard that the exclusionary rule was meant to reduce.
III. Conclusion
¶ 37 We hold that the exclusionary rule requires suppression of the evidence derived from the juvenile probation officer's unauthorized collection of Casillas's DNA in this case. All the evidence connecting Casillas to the carjacking was derived from the initial unlawful seizure of his DNA. Without the unauthorized cheek swab, Casillas's DNA would not have been in CODIS, the police would not have obtained a match to Casillas's genetic profile, and the detective could not have prepared the photo array presented to the victim and used to identify Casillas. Accordingly, we reverse and remand with instructions to vacate Casillas's conviction.
JUSTICE SAMOUR dissents.
JUSTICE SAMOUR dissents.
JUSTICE GABRIEL does not participate.

We granted certiorari to review the following issues:
1. Whether the court of appeals erred when it concluded that an unreasonable search by a juvenile probation officer does not require the application of the exclusionary rule.
2. Whether taking evidence in violation of the applicable statute requires suppression of that evidence.

A buccal swab is a method of gathering DNA that typically involves rubbing a cotton swab inside a subject's mouth against the interior of his or her cheek.

The federal Combined DNA Index System-CODIS, for short-is a set of databases available to law enforcement agencies across the country for law enforcement purposes. See Frequently Asked Questions on CODIS and NDIS, Fed. Bureau of Investigation, https://perma.cc/C97H-Q58M. Using CODIS, law enforcement officers can compare crime scene evidence to a database of DNA profiles obtained from convicted offenders. Id. CODIS can also be used to link DNA evidence obtained from different crime scenes, thereby identifying serial criminals. Id.