Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 20, 2019

**2019 CO 35**

**No. 18SA292, *People v. Tomaske*—Fourth Amendment—Exclusionary Rule—
Attenuation Doctrine.**

In this case, the supreme court considers whether evidence of a defendant's
alleged assault of a police officer should be suppressed based on police misconduct.  The
police entered the defendant's property in violation of the Fourth Amendment and the
defendant responded by allegedly assaulting and attempting to disarm a police officer.
The supreme court holds that the evidence of the defendant's alleged criminal acts should
not be suppressed because the evidence was sufficiently attenuated from the police
misconduct.  Since the defendant's choice to physically resist broke the causal connection
between the evidence and the police misconduct, the deterrent purpose of the
exclusionary rule would not be satisfied and thus the rule does not apply.

**2019 CO 35**

**Supreme Court Case No. 18SA292**
*Interlocutory Appeal from the District Court*
Montrose County District Court Case No. 18CR178
Honorable Mary E. Deganhart, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Jeremiah Anthony Tomaske.

**Order Reversed**
*en banc*
May 20, 2019

**Attorneys for Plaintiff-Appellant:**
Dan Hotsenpiller, District Attorney, Seventh Judicial District
Robert Davis, Deputy District Attorney
      *Montrose, Colorado*

**Attorneys for Defendant-Appellee:**
Megan A. Ring, Public Defender
Kori Keil Zapletal, Deputy Public Defender
      *Montrose, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1     Police officers entered Jeremiah Tomaske's property without a warrant and chased him into his house; Tomaske responded by resisting and allegedly assaulting a police officer. We must determine whether the evidence regarding Tomaske's actions was properly suppressed. The trial court found that the police officers' initial entry onto the Tomaske property was a Fourth Amendment violation. The court further found that Tomaske's alleged assault "occurred only as a result of the illegal action of law enforcement entering the curtilage[1] and then the residence in violation of the Fourth Amendment." As a result, the court suppressed all evidence of the alleged assault.

¶2     Because Tomaske's decision to resist was an independent act, we conclude that the evidence of Tomaske's alleged criminal acts was sufficiently attenuated from the police misconduct. Therefore, the evidence of what transpired inside the house should not be suppressed. Accordingly, we reverse the trial court's suppression order.

## I.     Facts and Procedural History

¶3     Mary Tomaske called the Montrose Police to report that her car had been stolen by her son, Josh Tomaske, and that he was potentially still on the property. While three officers were en route to the Tomaske residence, they received a report that the car had been returned. As the officers arrived at the Tomaske residence, they confirmed that the car was parked in the driveway but decided to investigate further. In doing so, they

---

[1] "Curtilage" is a legal term of art that describes the area directly surrounding the home. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013).

entered the backyard and observed a man—Jeremiah Tomaske—coming out of the detached garage and heading toward the house. The officers asked Jeremiah if he was Josh, the Tomaske who had reportedly taken the car.[2] Tomaske responded that he was not, and that Josh was his brother. Tomaske then told the officers that they had no right to be there, but the officers commanded Tomaske to come talk with them. Tomaske refused and continued to move toward the house. The officers pursued Tomaske through the backyard, and one officer followed him into the house and tackled him to the ground. Tomaske resisted and, in the course of the struggle, dislodged the officer's baton from his duty belt. At this point, the other officers assisted in detaining Tomaske. Ultimately, Tomaske was taken into custody.

¶4 Tomaske was charged with second-degree assault on a peace officer, disarming a peace officer, attempted disarming of a peace officer, and obstructing a peace officer. Tomaske moved to suppress any statements from the officers about what transpired inside the house, arguing that the evidence stemmed from a warrantless entry and unlawful arrest.

¶5 The trial court suppressed the evidence. As an initial matter, the trial court determined that the officers' entry into the backyard of the Tomaske home violated the Fourth Amendment. The court then reasoned that Tomaske's actions inside the house

---

[2] We will refer to the defendant in this case, Jeremiah Tomaske, as "Tomaske" moving forward.

were "a continuation of the illegal conduct of the officers." Therefore, the court determined that Tomaske's conduct "was not sufficiently attenuated as to dissipate the taint of the police misconduct," and it suppressed the officers' testimony about what transpired inside the house.

¶6 In response, the People filed this interlocutory appeal as authorized by section 16-12-102(2), C.R.S. (2018), and C.A.R. 4.1.

## II. Standard of Review

¶7 A lower court's ruling on a suppression motion presents a mixed question of fact and law. *Casillas v. People*, 2018 CO 78M, ¶ 18, 427 P.3d 804, 809. We defer to a trial court's findings of fact if they are supported by sufficient evidence in the record. *Id.* We review a lower court's conclusions of law de novo. *Id.*

## III. Analysis

¶8 To determine whether the evidence here should be suppressed, we first look to the Fourth Amendment's protections. Next, we examine the purpose and bounds of the common remedy for Fourth Amendment violations: the exclusionary rule. Then, we discuss the attenuation doctrine and its application as an exception to the exclusionary rule. Finally, applying the attenuation doctrine to the instant matter, we conclude that the evidence of Tomaske's alleged criminal acts was sufficiently attenuated from the police misconduct, meaning that the evidence of what transpired inside the house should not be suppressed.

## A. Law

¶9     The Fourth Amendment to the U.S. Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." There are two primary ways that the government can violate a person's Fourth Amendment rights: intrusion on a constitutionally protected area and violation of a person's reasonable expectation of privacy. *See United States v. Jones,* 565 U.S. 400, 411 (2012) (noting that there are two tests used to assess Fourth Amendment violations: the "trespass" test and the "reasonable-expectation-of-privacy" test). For purposes of the Fourth Amendment's protections, "the home is first among equals." *Jardines*, 569 U.S. at 6. The area directly surrounding the home, known as the curtilage, is an extension of the home for purposes of Fourth Amendment protection. *Id.* And because the curtilage is a "constitutionally protected area," a physical intrusion by the police on that area absent a warrant or recognized exception constitutes a Fourth Amendment violation. *See id.* at 7, 11–12.

¶10    When there is a Fourth Amendment violation, courts can apply the exclusionary rule to suppress evidence that was discovered as a result of the violation. *United States v. Calandra*, 414 U.S. 338, 347 (1974). The exclusionary rule is a judicially created remedy under which the "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *Id.* at 347–48. The exclusionary rule applies to evidence obtained as the result of an illegal search and seizure, as well as "evidence later discovered and found to be derivative of an

5

illegality," otherwise known as the "fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). The "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment." *Calandra*, 414 U.S. at 347. Because the exclusionary rule is not an individual right, it "applies only where it 'results in appreciable deterrence.'" *Herring v. United States*, 555 U.S. 135, 141 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Therefore, the existence of a Fourth Amendment violation alone does not mandate application of the exclusionary rule and the suppression of evidence. *Id.* at 140.

¶11 Although we must weigh the deterrent benefits of the exclusionary rule against the "substantial social costs" of excluding evidence, we note that excluding evidence "has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (quoting *Leon*, 468 U.S. at 907). As a result, courts have carved out several exceptions to the exclusionary rule based on "the causal relationship between the unconstitutional act and the discovery of evidence." *Strieff*, 136 S. Ct. at 2061. One such exception is the attenuation doctrine. *Id.*

¶12 The attenuation doctrine applies in situations where "the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Id.* Even if the police misconduct is directly connected to the evidence sought to be admitted, courts will still apply the attenuation doctrine if

"the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Hudson*, 547 U.S. at 593.

¶13 When defendants have responded to Fourth Amendment violations with willful criminal acts against police officers, courts have applied the attenuation doctrine and held that evidence of the criminal act is admissible. *See, e.g.*, *People v. Doke*, 171 P.3d 237, 239 (Colo. 2007); *State v. Aydelotte*, 665 P.2d 443, 447–48 (Wash. App. 1983) (collecting cases). "[A]n independent and willful criminal act against a law enforcement officer" is sufficient to break the causal chain between the police misconduct and the evidence of the new crime, such that the attenuation doctrine applies. *Doke*, 171 P.3d at 240. This is so for two reasons: (1) admission of the contested evidence does not incentivize illegal searches by the police; and (2) a contrary approach would "effectively give the victim of police misconduct carte blanche to respond with any means, however violent." *Id.* at 240–41.

¶14 *Doke* illustrates this framework. In that case, sheriff's deputies went to Doke's house to serve him with civil process. *Id.* at 237. The deputies approached Doke's front door and rang the doorbell, but nobody answered. *Id.* at 238. The deputies saw movement inside the house, so they entered the backyard and approached the back porch. *Id.* Looking through a window, the deputies saw Doke sitting in a chair with his eyes closed. *Id.* One deputy pounded on the back door and verbally identified himself, but Doke did not respond for ten minutes. *Id.* Apparently concerned that there was a medical problem, a deputy opened the back door. *Id.* At that point, Doke grabbed a shotgun, and the deputies withdrew from the doorway and ordered Doke to drop the

7

gun. *Id.* Doke was eventually taken into custody by a SWAT team and charged with three counts of menacing, one count of obstructing a peace officer, and one count of failure to leave premises or property upon request of a peace officer. *Id.*

¶15 The trial court suppressed all evidence of what Doke said to the deputies, as well as all evidence of the deputies' visual observations and all evidence seized from the house. *Id.* The court concluded that the deputies had violated Doke's reasonable expectation of privacy by entering his property and that this constitutional violation required suppression. *Id.* at 238–39.

¶16 We reversed and held "that Doke's allegedly criminal acts [were] sufficiently attenuated from any illegal conduct of the deputies so that exclusion [was] not appropriate." *Id.* at 241. We reasoned that "[t]he deterrent effect of applying the exclusionary rule in cases where the accused has committed a crime against police officers in response to police misconduct would be minimal. Admitting evidence of the crime does not provide police with an incentive to conduct illegal searches." *Id.* at 240–41. Also, importantly, we noted that it would be "contrary to the public interest" to establish "[a] rule that would allow a person whose right to be free from unreasonable searches and seizures was allegedly violated to respond with acts of violence." *Id.* at 241.

## B. Application

¶17 Turning to the instant matter, we must determine whether the attenuation doctrine applies to the evidence of what transpired inside the Tomaske residence.[3] On this issue, *Doke* is instructive. Much like the physical intrusion and menacing response in *Doke*, once the officers entered Tomaske's house, he responded with physical resistance. In so doing, Tomaske allegedly assaulted and attempted to disarm a police officer. Again, as in *Doke*, Tomaske's decision to resist "br[oke] the causal connection between the police illegality and the evidence of the new crime," thereby implicating the attenuation doctrine. *See id.* at 240. To merit the exclusion of evidence, the exclusionary rule requires more than merely "but for" causation between the police's illegal acts and the discovery of evidence. *Id.*

¶18 However, both here and in *Doke*, the trial courts relied on "but for" causation to demonstrate the causal connection necessary to exclude the contested evidence. Both trial courts ruled, in effect, that "but for" the police misconduct, the police would not have gathered any evidence. But as we stated in *Doke*, "but for" causation does not necessarily justify the exclusion of evidence. *See id.* Instead, the issue is whether the evidence was "come at by exploitation of [the police's] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quoting *People v. Rodriguez*, 945 P.2d 1351, 1363–64 (Colo. 1997)). Here, the contested evidence suppressed

---

[3] The issue of whether the police violated the Fourth Amendment is not before us.

by the trial court was evidence of Tomaske's new and independent criminal acts that arose from his decision to physically resist. Thus, unlike the scenario where police officers' misconduct leads to their *discovery* of evidence of a *completed* crime (e.g., finding contraband), this case involves police misconduct that led to the *commission* of a *new* crime. The exclusionary rule applies to the former situation, not the latter.

¶19 Furthermore, recognizing that courts only apply the exclusionary rule when doing so will sufficiently deter police misconduct, *Herring*, 555 U.S. at 141, we conclude that no such deterrence would be accomplished here. Suppressing evidence of the alleged crimes committed against the police officers here would have a minimal deterrent effect on police misconduct because it was Tomaske's decision to physically resist that caused the police officers to observe his alleged criminal conduct. Application of the exclusionary rule requires a strong causal connection between police misconduct and the discovery of evidence, and it is the strength of that connection that merits the heavy toll of excluding evidence. Because the causal connection here was broken by Tomaske's decision to resist, the exclusionary rule does not apply and the evidence of what transpired inside the Tomaske home should not be suppressed.

## IV.  Conclusion

¶20 In sum, the evidence of Tomaske's alleged criminal acts was sufficiently attenuated from the police misconduct such that the exclusionary rule does not apply. Therefore, we reverse the trial court's suppression order, and we remand to that court for further proceedings consistent with this opinion.